JOURNAL ENTRY and OPINION.
{¶ 1} Appellant State of Ohio appeals the trial court's granting of appellee Antwane Young's motion to suppress and assigns the following assignment of error for our review:
 {¶ 2} "The trial court erred when it granted the defendant's motion to suppress."
 {¶ 3} Having reviewed the record and pertinent law, we affirm the decision of the trial court. The apposite facts follow.
 {¶ 4} On February 22, 2002, at approximately 12:20 a.m., in the city of Cleveland, Patrolmen Norman Saborski and Brian Carney were patrolling the area of East 123rd and Forest Avenue. While patrolling, the police officers observed Young walking east on Forest Avenue. They passed Young and drove around the block. When they came back to the area where they first observed Young, they saw him leaning into the passenger window of a white Mercury Cougar.
 {¶ 5} The police officers upon observing Young leaning into the car, increased their speed in order to pull up beside the car. As the officers drove to the stopped vehicle, it sped off leaving Young standing alone.
 {¶ 6} Upon seeing the patrol car, Young quickly walked away. The police officers then stopped Young and had him put his hands on the patrol car. Young put his hands in an unusual manner: he "hunched" his shoulders and put his hands inside his coat sleeves. Young was told to remove his hands from his sleeves, he complied, but his fists were still clenched; he was then told to put his hands down, the police officer then had to put Young's hands down himself. When Young put his arms down, patrolman Saborski, looked down to see if anything would fall out of his hand, but nothing fell. However, as the police officer was "feeling" the coat, he saw a large rock on the ground that later tested positive as crack cocaine.
 {¶ 7} The trial court in granting Young's motion to suppress relied on the factors enumerated by the court in State v. Bobo.[1]
Those factors if found to be present preceding the stop, tend to point to the establishment of the required "reasonable suspicion" needed to justify an investigatory stop pursuant to Terry v. Ohio.[2] The Bobo factors are: 1) was the area in which the stop was made known for having illegal drug transactions? 2) the time of day when the stop was made. 3) whether a reasonable and cautious police officer would have made the stop. 4) whether the police officer was familiar with the area and the methods in which drug transactions occur there. 5) the police officer's observation of the actions of the stopped person. 6) the officer's experience in making drug arrests based on certain gestures of stopped persons. 7) Whether the officers were out of their vehicle at the time of the stop.[3]
 {¶ 8} The trial court found factor number 5 relevant in its decision to grant the motion to suppress. The court held: "The court believes that in and of itself a change of direction on a cold night, a conversation in a white Cougar which drives away is not enough of a set of actions that would satisfy the Bobo specific factors for which an investigative stop was justified. Therefore, the Court does grant the Motion to Suppress."
 {¶ 9} The question presented in the State's only assigned error is whether the observations of the police officers warranted an investigatory stop under Terry v. Ohio.[4] The Supreme Court of Ohio inState v. Carter[5] in discussing Terry held: "the court held that where an officer observes unusual conduct which leads him to conclude in light of his experience that criminal activity may be afoot and that the persons which whom he is dealing may be armed and dangerous, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him." In Terry, the court held in regard to the intrusion, "the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion."[6] Those facts must be judged against a reasonable standard.[7]
 {¶ 10} The United States Supreme Court in Brown v. Texas[8]
held: "[being] in a neighborhood frequented by drug users, standing alone, is not a basis for concluding that appellant himself was engaged in criminal conduct." The Ohio Supreme Court in Carter, held that to be able to stop those at-will in a neighborhood plagued by drug abuse would result in the wholesale loss of the personal liberty of those with the misfortune of living in high crime areas."[9]
 {¶ 11} In the cases from this court where defendant's behavior has been held sufficient to justify a Terry-type stop, this court has focused on the additional behavior or movement of the defendant such as placing something in his mouth upon seeing the officers and turning his back to the officers.[10] Here, Young did not turn away from the officers nor place anything in his mouth. The police searched him and found nothing. The police would have us speculate that the rock of cocaine found on the ground belonged to Young. However, the officers' testimony does not establish this fact. The trial court who heard the testimony concluded the officers' testimony fell short of establishing reasonable suspicion, and we agree.
Judgment affirmed.
ANN DYKE, J., and FRANK D. CELEBREZZE, JR., concur.
[1] (1988) 37 Ohio St.3d 177.
[2] (1968), 392 U.S. 1, 88.
[3] Bobo, Id. at 179.
[4] (1968), 392 U.S. 1, 88.
[5] (1994), 69 Ohio St.3d 57, p. 16.
[6] Terry v. Ohio (1968), 392 U.S. 1, 88.
[7] Carter, Id.
[8] (1979), 443 U.S. 47.
[9] Carter, p. 19.
[10] State v. Nievas (Mar. 7, 1996), Cuyahoga App. No. 69284.